Because this case went over, we're going to cut the next case five minutes on each side. No, I'm just kidding. United States of America v. James Holley and Mr. Brodin. Thank you. May it please the court. My plan today is to address two of the issues in the brief, the 924C issue and the suppression issue. And with the court's indulgence, I want to knock out the 924C issue because I actually think that's a very easy issue for the court. In this case, the indictment charged Mr. Holley with possessing an HK .45 caliber handgun, a specific gun, and he possessed it in furtherance of a drug trafficking activity, to wit, a conspiracy involving marijuana plants. And we know from the cases cited in the brief that when you use language like to wit or specifically, that's an expression of limitation and it makes what follows an essential part of the case. So the government had approved the HK .45 caliber and they had approved it was used in furtherance of the planned conspiracy. And it's clear even the district court didn't necessarily understand this because when the defense moved for a directed verdict on the 924C issue, the court said it finds there's sufficient evidence for a reasonable jury to conclude that Mr. Holley possessed the .45 caliber handgun in furtherance of a drug trafficking conspiracy. And of course, that's not what was required. The government in this case made its choice and it's got to live with its charging decision. It could have charged this not as a marijuana plant conspiracy but as a marijuana conspiracy or it could have just charged in the 924C in furtherance of a drug trafficking activity as the court referenced, but it chose not to do so.  There was a .45 HK gun found in Mr. Holley's residence but not any gun in the grow house. And the only testimony regarding the gun was that people saw the gun either in Mr. Holley's residence at a particular point in time, although not necessarily that gun but a gun at Mr. Holley's residence and they saw him in possession of a gun in the vehicle. So as I said, I think the 924C case, I think it's very easy and it really comes down to holding the government accountable for its charging decisions. It made the decision and then didn't prove its case. So I would suggest to the court that the 924C count three has to be reversed on the sufficiency. With regard to the dog search, the suppression issue. What do you do with Bean? I'm sorry, Judge? What do we do with our decision in the United States versus Bean or Beany or whatever it's pronounced? Let's get to it. Besides a brilliant dissent in Bean, you've got Bean. You're the first person to call it that. There's also a brilliant dissent in Massey, I believe, so we can talk about that, too. But basically, we've got three issues. One is a dissent. He may be right. I tend to think he is, but that's unfortunate. I understand it's a dissent. Unfortunately, yes. Is it a search? There's three questions. Is it a search? Does Davis good faith apply and does Leon good faith apply? So the Bean really goes to is it a search? And the Bean, the problem with the government's analyzation of the case and why Bean isn't applicable is the government analyzes this as a curtilage case and whether the driveway is curtilage. The search was of the garage. And, in fact, if you read how the officer described the search when he testified at the trial. I'm sympathetic to the argument, but the majority of Bean wasn't. Bean involved the car. They said open fields, and open fields wherever a garage door is. And I got, you know, frankly, an awful lot of garage doors don't come off the front street. They come off back streets, back alleys, and all kinds of things that may defy the curtilage rule itself. My mother's name came to Texas, and we have all these back alley garages. Where was the garage in this case? It was in the back. It was an attached back garage. Attached back? You mean it was still attached to the house? Right. You could walk through the garage into your home. There was a garage door inside. So if you read what the agent says at his trial, it says the dog performed a free air sniff of the residence. The dog alerted to the odor of an illegal drug coming from Mr. Holley's residence. And so if you look at Bean, the issue with Bean is that it is a search. However you characterize Bean, ultimately what was sniffed was the marrow of the drugs inside a vehicle, and we know from a whole host of them. If they're in a place where they're outside the curtilage, then whatever they may pick up, even though it emanates from the house, then that would be permissible, wouldn't it not? I don't think under Jardines or Kylo. No, Judge. I think the car distinction is a very important distinction in Bean. I think that's what distinguishes Bean. Now, if you have a dog out in the field, I mean a really good dog, and he has his nose in the air and looking at a house, that's okay. Judge, I would suggest under Kylo it's not. You could have an airplane over the house and putting the thermal imaging into the house, and that's not okay. The owner of the house certainly doesn't own the air above the house or the flight path above the house. There are two different things. You're talking about the ability with heat-seeking devices to look at a house to see what people are moving, doing, and so forth. That's images coming from the house itself. That's a different type of invasion than a dog, and the Court has drawn this very important distinction of what the dog is simply smelling of the sense of the order. So I think you have a problem if you rest on the premise that a dog sniffs from what is conceded to be an open field and is otherwise indicted because it emanated from a house. Well, I think Justice Kagan in her concurrence in Jardine's would certainly disagree, and I'd also point, granted it's a non-published decision, I gleaned it from Judge Graves' dissent, and it's not cited in our brief, but it's the Nagy case, and there it was a garage door case, and the language of the Court said the District Court's first reason for denying the suppression, that a sniff is not a search, does not withstand scrutiny. You look at the case that just came out six days ago, the Whitaker case out of the Seventh Circuit, you have a common hallway. That's always been treated as the equivalent of an open field. The government wants to rely on the majority opinion in Bean. Is that right? Yes, I think that's a fair statement. They think it's totally controllable. And in Bean you had a car in a driveway. Exactly. Is that right? In the middle of the day, but yes. And as the majority found, this driveway came right off a street, it was open, and so we're talking about an open field. It's what Girl Scouts and politic people would transverse the driveway to go to the front door of the house. You're not agreeing that this garage was an open field, are you? No. No. I mean, I'm going with the premise Judge Higginbotham started with, but no. It's a back garage. It's 5 in the morning. That is not the type of open. People would get shocked coming up to your garage door at 5 in the morning in a back alley. There's a lot of distinctions. Especially in Texas or Mississippi or Louisiana. Not in my house, but in a lot of places. Well, I live out on a ranch, and I assure you, you wouldn't do that. You wouldn't walk up to the front driveway or anything else over there. You might in the middle of the day. I'm not defending Bean. I'm just saying that that's the law we deal with. And under Bean, they didn't draw this distinction between the back entrance and whatever. They said a driveway is a field, and they were emphatic about it being a bright line road. Is the record clear on the record that this was a back entrance to the garage? Yes, the government actually has a picture of it in its briefs. Okay, fine. Then it comes down to whether under Bean the panel can draw a distinction. The easy distinction is it's a car versus a search of a residence. That, to me, is the easy decision. We've always allowed dog sniff searches of cars and luggage. So to be clear, you have a house. There's a house in your case. Right. And there is a garage, which is attached to the house. Correct. Not a detached garage. You pull in the garage, you park your car, you go into the house. Right. And there's a driveway that allows—I'm assuming that you can drive up— Drive down the alley, pull into your driveway. Correct. So there's an alleyway. You drive down that alleyway and then into the garage. Correct. And this dog sniff occurs in the alleyway. No, it occurs—we don't know where on the driveway, but essentially it's off against the garage door. And then the dog alerts on the garage door. The garage door, or as the officer testified at the trial, the residence, but yes. All right. But he calls it the—but it's at the garage door. Right. The sniff, the nose, is at the garage door. All right. And I guess I'm guilty of thinking about the purposes of which people use a garage, because some people actually use them as extra rooms, dens, playrooms. We use them as a toy storage closet. Yes. Listen to me for a minute. Some people use them as extra rooms, right? Correct. Some people actually convert them, put beds in them, they live in them. They shoot pool in them. All of the other stuff that people do inside their homes can occur in a garage. Correct. All right. You look at Jardines itself, it talks—Jardines says the dog sniff isn't good for a residence or its immediate surroundings. You have the Whitaker case that just came out of the Seventh Circuit six days ago, and as I said, even though it's in the common hallway, they treat it, they analyze it as a search of the home when the dog's nose is up against the apartment door and says the dog detected something that otherwise would have been unknowable within the apartment. You have the Mallory case, granted a district court case, that is a garage door case, and they analyze the—they do the analysis as to whether it's a search of the garage. And again, naggy, granted it's unpublished, but— What Jardines says is that the dog couldn't come onto the porch. Correct. Is that right? Correct. Because the porch is curtilage. Correct. And here, the dog came onto the driveway next to the garage. Up in front of the garage, but yes. So are you arguing that that's curtilage or that that is actually just the residence? I'm arguing it's the residence, but I'm arguing in some way it's not that important because we've got to figure out what was searched. And in here, the garage or the residence was searched, whereas in Bean it was a vehicle that was searched. Well, you don't have to convince me that the majority in Bean— It's not the driveway being searched. You've got to convince some other people. I understand. In my point, it's not the driveway being searched, and that's how these other courts have analyzed it. And it was clear to the authors of the naggy decision that Jardines applies to a garage. I suggest to you that there's no argument that the Davis good faith issue applies. The more interesting deal was just brought to the Court's attention, the 28J letter, as to whether Leon good faith applies. And I'd suggest to the Court a few things. One is you look at Whittaker. Whittaker, although it didn't cite Leon, rejected a good faith. Burstyn actually talked about Leon. Burstyn is another case that came out recently, a sniff outside the window of a multi-unit department, and they decided Leon didn't apply. And while Massey case is interesting and it troubled me for a little bit, I must admit, I realize that although Mr. Combs thinks it applies, the Solicitor General doesn't think it applies. I went and I looked at the cert petitions that were filed in Massey, and the government actually filed a response to the cert petition without invitation, which is somewhat unusual. And they cited to footnote three of the Court's opinion in Massey, the majority opinion. Again, excellent dissent, but the majority opinion, where it essentially says that they didn't even necessarily have to find, they didn't have to duress the fruit of the poisonous tree argument. And I looked at footnote three, and they say, we say possible taint, because it wasn't clear to the majority in that case whether there was actually a causal connection between the constitutional violation in that case, the legal detention, and the ultimate warrant. Here, there's no doubt. I mean, the warrant comes down almost exclusively to the dog search. When these cases that we're talking about, Jardine and Bean, in relation to when this sniffing took place, did we have any case law on dog sniffing that was in existence at the time that this incident took place? Well, and that goes to Davis, and Davis says basically unequivocal controlling Fifth Circuit precedent. And the answer to that is no. There was the best sort of dog sniff discussion was Goose Creek, the school case, where the Court basically said, you know, sniffing at a locker in a car, again, a car is okay. Sniffing at a person isn't okay. There was, granted, one contrary unpublished decision by the Fifth Circuit, but again, that's not binding precedent. So if you look at what Davis requires, unequivocal binding precedent, the answer to the Court's question is no. So here we're talking about 2008? 2008 was when the search was conducted. So we'd have to look at what the state of the law was at the time this search occurred? You have to look at what the unequivocal law was in the Fifth Circuit, yes. So then why wouldn't a good faith exception apply based on the state of the law in 2008? Because there was no unequivocal Fifth Circuit precedent that said that a dog search of a residence or a garage was permissible and not a search. Just to say there wasn't anything that said it wasn't permissible? No, there wasn't anything that said it wasn't a search. The best analogy I can give you is that Goose Creek, where it recognizes there's a difference between a school locker and a car and somebody's person.  But you're saying unless there's law that says it is permissible, then it's an absence of good faith to do that kind of a search? For the Davis pong of the good faith, correct. Massey doesn't say that, does he? Massey doesn't talk necessarily about Davis. It may, but essentially it relies on Leon and says it doesn't matter what the state of the law is. The officer had good faith and then got a warrant and the judge signed off on the warrant. So there's two different prongs of the good faith. The Davis, which I suggest is easy because there was no bonding Fifth Circuit precedent. The Leon, based on the government's 28J letter, is a little more difficult. There's certainly plenty of cases from other circuits that say there is no Leon good faith. You basically look at the Davis good faith. But again, even Massey doesn't fully address it in the position the Solicitor General took before the Supreme Court. Mr. Combs? May it please the Court, my name is Jay Combs and I represent the United States of America and I represent the United States in the court below. There are three primary grounds on which this court can affirm the district court's denial of Mr. Hawley's motions to suppress. And the first, as the Court's heard, is on the Massey case. And that is essentially a Leon good faith analysis. And there are two prongs to Massey. I'll talk about the second one first because it's fairly easy and easily resolved here, and that is that the resulting search warrant has to be sought and executed by a law enforcement officer in good faith as prescribed in Leon, and then there's the four Leon factors. None of those are really in play here and none of those have been alleged by the defense. So really the question is, the first prong of Massey, whether the prior search which led to the affidavit was close enough to the line of validity that an objectively reasonable officer who prepared or executed. If they brought the dog to the front door of the house instead of the garage door, you're still saying that would be, it would have been okay for them to conduct the dog sniff? Arguably in 2008 under the Massey appeal, because of course under the Massey analysis rather, because this occurred in 2008 and it was pre-Jardines, so arguably that would save them under a Massey. Right at the front door. Right at the front door because in Massey the question is whether the officer is close enough to the line of validity that an objectively reasonable officer, and in fact the Ponce case in the Tenth Circuit points out when looking at whether an objectively reasonable officer could arrive at that conclusion, they point out that the fact that four Supreme Court justices believed that that was not an unconstitutional search shows the objective reasonableness of the officer in arriving at that same conclusion, that this is a close call, and they took it to a magistrate and such. So, and we believe that the same thing applies in this case. First of all, of course the same reasoning that four Supreme Court justices had a different. All right, so now, I understand what you're saying, but now we're at Jardines. Yes. So clearly at the front door would be impermissible. Absolutely. Do you agree? Clearly. Yes, Your Honor. I submit to you that in the house I live in I've entered through my front door less than a dozen times. Every time I go in I go through my garage door. I press my little garage door button and I go in through the garage door. It's an entrance. So how is that any different from a person who uses the front door to go into the house? It's the entrance. The garage door is the entrance to the house. I agree, Your Honor. And the Supreme Court, though, when looking at the done factors, because we have to go back to the done factors as this court has done time and again. And the first of all, the question is the proximity to the home. And that was a clear call in any of these cases, including Mr. Hawley's case. This garage door is there with the home. But that doesn't end the inquiry. So the next question is whether it's included in an enclosure surrounding the home. And it is not. Mr. Hawley, as the pictures in our brief show, he had put up privacy fences around his backyard. And yet the enclosure around the home, even the bean house, in fact, had a fence that surrounded his driveway, but Mr. Hawley did not. Mr. Hawley's, in fact, driveway in the key house here, that is the gray wolf house, as the pictures show, runs right next to a public sidewalk. And one could even stand on the public sidewalk and reach out and touch his garage door or come very close to it from the public sidewalk. And so it's not with an enclosure surrounding the home. And the nature to which the area is put is the third done factor. Mr. Hawley's not. In fact, Mr. Hawley's. If I have the good fortune to have a fenced-in estate, then I can avoid these dog sniffs. But if I just live on a lot in a subdivision, then I'm subject to having a dog sniff at my door any time the police decide they want to have him sniffed. Right? Well, Your Honor, it depends on the nature to which you put the area and the steps that you've taken to protect the area from observation. And as you point out, having a fence around is something that's important there. But, you know, as the Supreme Court has mentioned before in Illinois v. Lidster, and it's not in my brief, but it's at 540 U.S. 419, having the possibility of the police do something, in this case, sniffing every garage door in the neighborhood and the actuality of it are different because the Supreme Court pointed out that there's a restraint on resources. And so the possibility that the dogs have been in use for 30 years now in this context. Because they won't do it because they don't have time to do it. They don't have time to do it. They'll just pick certain areas where they'll do it. They don't have time to do everybody. Well, and they say the second prong is also that there's a check of community hostility. And it all gets back to reasonableness at the end of the day. And in this case, and the Supreme Court looked at that in Jardines as well. And in this case, what the officer did, they didn't just go to Mr. Hawley's garage door to sniff. They actually spent several weeks in the affidavit and the warrant reflects that, that they did an investigation of his financial records. Then they went and did surveillance on two different occasions. But whatever else they had, we knew that that first warrant was issued primarily based on, well not primarily, almost, I guess to say almost solely would probably be incorrect. But it rested in chief on the fact that there was that dog sniff. Isn't that right? On that Gray Wolf property. On the Gray Wolf property, we wouldn't agree with that. Because the affidavit for the Gray Wolf property itself states that Officer Sanchez, the dog handler, could himself smell marijuana emanating from the garage, which goes back to Massey. And that is whether a reasonable officer, objectively reasonable officer, would believe that this was close enough to the line of validity. A smell of the officer itself, if that's all that had been in the warrant, or in the affidavit for the warrant, would have been sufficient to search Mr. Hawley's garage. And in fact, Justice Kagan in footnote two of Jardine's mentions that everyone can agree that if the officer had smelled, and in that case, unquestionably, they're standing on curtilage, standing on the front porch. And she says everyone can agree that if the officer himself could have smelled marijuana, that would not have been a search. And so under the Massey analysis, the officer, or objectively reasonable officer, could believe that even excising the dog out, there was sufficient grounds upon which to issue a warrant. And finally, under the second prong of the Massey analysis, showing the objectable reasonableness of the officer, at that time in 2008, that this court had previously held in an unpublished opinion, granted, but the Tarazon Silva opinion, that a sniff of a garage door and a dryer vent, in that case, was not a search by a dog. A sniff by a dog was not a search, and they went through the done factors. And I would submit to the court that if three judges of this court arrived at that very conclusion, then in 2008, prior to Jardine's, it was objectively reasonable for an officer to arrive at that same conclusion. So the next- You keep arguing about objective reasonableness on the two-step of Massey. In doing so, you're implicitly conceding weakness in the underlying. Dr. Sepp, we aren't obligated to follow the two-step. We take the easier of the two courses. And if you're right in the law, then why is the easiest course to say that Bean controls? That's the end of the case. I do agree, and we don't concede that there was an unconstitutional search and believe that Bean does control here. And in fact, this case even presents a more compelling case than Bean because, as I noted already, in the Bean case, Mr. Bean's driveway was fenced. In Mr. Hawley's case, the photographs readily show that it's not fenced. He's not putting it to private use. In fact, in both cases, the photographs show that he's storing his garbage cans out there and doing nothing else really with the area. And so that leans toward it being the area being an open field as it was found to be in Bean. And so once it is an open field, then a search on an open field is of no Fourth Amendment import. And so we believe that Bean— If one part of your property don't fence the other, then the part that's unfenced by definition becomes open fields? Not necessarily, Your Honor, but like you said, the courts have— You're certain that Bean's driveway was fenced? I believe that's what the opinion says, Your Honor, that a portion of it was fenced. And I think the opinion mentions that it's— I spent a lot of time with it. I just don't remember that fact, which is not to say you're not correct, but I spent a lot of time with it. I know you did, Your Honor. All right. So—but in this case, the four done factors, we believe, lean toward, just as in Bean, the driveway being an open field. And not that it is an open field. It's just that it's not curtilage and it's not the home. And to address the argument made by Mr. Hawley that this was a sniff of the home, it is our contention that it was not a sniff of the home, in the same way that if the Supreme Court in Jardines had held— had believed that sniffing the bottom of the door, the front door, that is the odors emanating from inside the home, clearly the home, then it would have been an easy case. It certainly would have Fourth Amendment significance. But the question was—but they didn't arrive at that conclusion. They didn't say, well, he's sniffing the front door, therefore he's sniffing the home. What they said was, he's sniffing the front door, therefore he's sniffing the curtilage. And the reason why— It has to—where the dog is sniffing from has to control. Yes. Because quite plainly, if the dog is in a place where it can be, and it smells, that's permissible. The Supreme Court has made it quite clear that dog sniffing is quite different from enhancing—these heat-enhancing situations themselves, which are not permissible from a distance or from an airplane or whatever. But dog sniffing is different. And the Supreme Court says it is, and so it is. I agree, Your Honor, and that is the key distinction. In fact, the Supreme Court made that analysis. They go to point out that the four feet of the dog— What do you do with a house that sits out on a ranch and it sits up on a hill and it has no fence around it at all, and no driveway goes up to it? The driveway stops off at a separate place, and you walk away from there up to the house. Not an uncommon arrangement in a ranch country. You tell me the sheriff can come out there and walk up to the house, not go on the porch. He's not that stupid. He walks up to the house and lets the dog smell, and then gain an evidence decision to get a warrant. In all likelihood, Your Honor, in a case like that where he's sniffing around the outer edge of the house, it really is going to come into a Dunn analysis at the end of the day. It's going to look at whether the area is within enclosure,  the nature of the area, of the uses to which it's put in. In fact, I think the Burston case— What you're saying is that an awful lot of houses, first off, have come off the back, particularly in urban areas, which means that you can then walk up to the house, in the front of the house, just to walk on the porch and use a dog sniff for the contents of the house. Well, I believe the Burston— Well, a lot of houses in the urban area do not have front porches. Yes, sir. So you walk up, there's a couple of steps, a stoop, and a door, right? So that just means that under that theory that it's an open season, you take your dog, walk right up in the yard, and smell what's going on in the house. I don't believe it would be, Your Honor. Why not? Well, because the— You're not invading the cartilage. There's not a— Well, there's arguably— Really, there's not a lot of case law on this in the Fifth Circuit right now. But as the case law is developing— So, for instance, the Burston case that was brought up in the appellant's 28J letter, they point out that that was a front window and kind of off to the side of the front door, and Mr. Burston was making personal use of that area. He had a barbecue grill and some other personal effects in that area. So, again, it all comes down to a Don analysis. Well, using a car in a driveway is— That's a real expensive personal effect. That's your car sitting in your driveway. And the majority of the beings said that was okay. So I don't know how the fact that somebody— What would you have to be using in an area to make it so personal that it's invasive to do a dog sniff of that area? Well, for instance, if on a side patio, you've set up tables and chairs, and you've essentially turned what is a— what would normally be a front porch, where you might sit on your chairs and kind of watch the traffic go by. And in a case like that, you've now created a situation where, as the Supreme Court mentions in Jardines, the privacies of life kind of extend out into that area. And the same thing could be done in a driveway. That may be, but under your approach today, as I understand it, then unless the yard is fenced, you can just take the dog and walk right up to a house and smell. I don't believe that it's as categorical as that, Your Honor. Well, that's what happened here. I mean, if that's not true, then your principle that sustains this— They didn't search that car. They took the dog up and they smelled that, and they defend that on the basis they were entitled to be there. And if they were just as entitled to be there, with a closed garage door, they're just as entitled to walk around the house, aren't they? Are you going to redefine curtilage? No, I'm not redefining curtilage. I'm saying, though, that there— I recognize that there could be some exceptions, like a side yard. Three-side of the house exceptions, the three-side rule. This place had been under observation for a couple of weeks? Yes, I had, Your Honor. Is there anything in the record to show whether they ever saw the garage door open? I mean, was it being used for cars? It probably—I don't know, Your Honor, but the affidavit indirectly mentions that. There's nothing explicitly in the record on that, but the affidavit mentions that they saw Mr. Hawley's car come up to the house. It never says that I recall that it actually went into that garage, but they did see his car at the house. I'm presuming it was in the driveway or in the garage. But we don't know if the garage was being used as a garage. If the door was never opened, it could be that it was made part of the house. It could be. There's no evidence. Frequently, if you have a conversion garage situation where a person has a—where they wall off the garage, for instance, wall off the garage door and create a room there, there's no evidence of that. In fact, Mr. Hawley was storing his trash cans just outside the garage door. It wouldn't make any difference. In all likelihood, in this case, it would not make any difference to my argument. In other words, as you see with a lot of houses, what was once a garage has now been bricked right across the front. It's quite clearly not a garage. It's got a bay window there and a brick wall four feet high. Wainscot right across the front of it. But the driveway comes right up flush to it. But under your theory, my point being is that what you're saying is that you can walk right up to a house with a dog and sniff it, period. No. In fact, in the— What's the limitation you would draw? Well, the hypothetical that you just mentioned where they bricked off the door or they bricked off the garage door and now they have the door— You already said that the other parts of the house, if you don't go on the porch, can be searched by the dog. I believe that— Why do you want to go on the porch when you go inside the Kerley? In a situation such as that, if the garage door or the garage has been converted and there's a door leading into the driveway, it may be effectively now your front door. So I think we have to go through the Dunn analysis yet again to determine what is the nature to which that area is being put or the nature of the uses. It's not being put to anything. It's just now just part of the house. No one sits out there, the driveway stops flush with it, and it's a wall. And so I agree that under a Dunn analysis, that may make an important difference in a case like that. But that isn't the case that we have here. And so in this case, Mr. Hawley's driveway abutted a public sidewalk and a public street in the Gray Wolf House, which is the critical house. And so we would ask the court to affirm the decision of the district court. Thank you. I want to read the concluding statement of Jardine's. The government's use of a trained police dog to investigate the home and immediate surroundings is a search. And talk about where the dog is. It says the investigation of the home and its immediate surroundings is a search. So I disagree with how the government characterizes Jardine's. I've seen houses where not only is the garage made into a room, but a door is placed there, probably not the front door, but a side door. And under the government's argument, we had a house that was converted and a door was there. The dog could go right up to the door. You have to look at the area that was searched. And the area that was searched, as Jardine says, was the home and its immediate surroundings. We don't have to analyze whether there was a basketball goal in the driveway or whether he barbecued in the driveway. We don't have to get that far. The dog sniffed the home. Under Jardine's, that's a search. Regarding the good faith of the officer, here we have an officer in a different town. This was a Carrollton police officer coming to the city of Dallas at 5 a.m. in the morning to do this search. That same officer goes and gets a warrant, says that he smelled marijuana in the garage. Lo and behold, there is no marijuana in the garage, so you ask yourself about the officer's good faith. No marijuana in the garage. Even if you think Massey is controlling, as I said, the solicitor general doesn't, based on footnote 3 of Massey, this was not something that was necessarily close enough to the line, given the manner that the search was done. Surreptitiously, 5 in the morning, taking this dog from one city to another to sneak up somebody's, that's what burglars do. That's not what police do. That's what burglars do, sneak up to your garage door at 5 in the morning to try to hotwire your car. You also have the, Why isn't the question whether or not the person, the area around the house that can be sniffed, you can't go into an area that, in which there is an implicit license, unless there's an implicit license for you to be there. And that means that the court said that, well, yeah, there may be an implicit license for a person to walk up and knock at the door, but that's not going to be sufficient for these purposes. I agree with that. But implicit in all of that is that there is no right to walk up to the side of a house that doesn't, in other words, the expectation of privacy extends right around the house. This open field does not obtain to walking up to the house itself. I fully agree. A Girl Scout might walk up on the porch in Jardines and knock on the door. No Girl Scout is walking up the driveway at 5 in the morning. The court said that they are gathering information by physically entering and occupying this area to engage in conduct not explicitly or implicitly committed by the owners. That is, officers are obtaining information in a constitutionally protected area during an unlicensed intrusion. It's unlicensed, although an officer, like any other person, has an implicit license to approach the home by the front path, not promptly but briefly received and in essence. There is no customary invitation to introduce a trained dog to explore the area around the home in hopes of discovering incriminating evidence or something else. Now, that's the language of the Supreme Court, and it does not allow people just to walk, the open fields doctrine simply can't lie side by side with that, not reading the open fields doctrine to be what I guess I'm arguing Judge Graves just said. Another excellent legal analysis. I agree completely. I want on that panel. I fully agree. As I said, I think that the first two questions are easy questions. I think it's a search. The Davis good faith doesn't apply. The Massey case troubles me a little bit as to whether Leon applies candidly, but given the Solicitor General's view of Massey telling the Supreme Court they shouldn't take it because Massey really doesn't. Footnote three makes Massey of very little value as far as a circuit split. Then you have the cases, the Whitaker case, which just decided, denied, decided there wasn't good faith. You have the Burstyn case that decided there wasn't good faith. The very interesting thing is Massey actually relies on the Eighth Circuit for its good faith analysis, yet Burstyn is a good Eighth Circuit case that came out after Massey and analyzed it under the dog search under Leon and said there was no good faith. So I think that's the answer to that. But thank you for your time. Thank you.